■ ALEXIS D. FRAZIER, Respondent, v NOELLE PENRAAT, Appellant. [822 NYS2d 21]—

Order, Family Court, New York County (Helen C. Sturm, J.), entered on or about December 16, 2004, which, inter alia, awarded child support to petitioner in the amount of $958.33 per month, unanimously reversed, on the law, without costs, the order vacated, and the matter remitted to Family Court for entry of an order setting the amount of monthly child support owed by respondent, and the arrears, in accordance with the decision herein.

Petitioner and respondent were involved in a same-sex relationship for 14 years, which terminated with their separation in August 2001. Respondent is the biological mother of two boys, who were born in April 1992 and September 1993, and petitioner is the adoptive mother of the two boys. At the time of their separation, petitioner vacated the family residence, a duplex on Central Park West, and moved into a two-bedroom apartment on East 126th Street. At that juncture, the parties shared equal custody of the two boys, initially exchanging the children every week, and then at three-week intervals. Petitioner is employed as an associate professor at LaGuardia Community College and earns an annual salary of approximately $78,000. Respondent is self-employed and the sole proprietor of Noelle Penraat, Inc., which is in the business of negative matching, a technical process used by the filmmaking industry.

The parties, shortly after their separation, began mediation at the Lesbian, Gay, Bisexual & Transgender Community Center and, in October 2001, executed a mediation agreement which provided, inter alia, that respondent would pay petitioner $600 per month toward her credit union loan for approximately 18 months, and $600 per month in child support. Respondent, however, ceased paying the agreed-upon support in March 2002, and in May 2002, petitioner filed a petition for child support. Respondent subsequently filed a cross petition for child support approximately three weeks later.

A child support hearing was commenced before Support Magistrate Nicholas Palos on September 19, 2002, which concluded, after 11 days of testimony, more than one year later, on September 29, 2003. Respondent testified that her adjusted gross income for the years 2000, 2001 and 2002 was $66,268,

$56,609, and $32,047, respectively. Respondent attributed the drastic decrease in income to the aftereffects of the September 11, 2001 terrorist attack on the World Trade Center; a film industry strike in 2001; a gradual move by the film industry to Canada, where it is considerably less expensive to film movies due to government subsidies; and the "digital phenomenon," as it has become significantly less expensive to finish a movie on DVD as opposed to film.

Petitioner, in sharp contrast, testified that respondent often received cash payments through her business, which were kept in a desk drawer, and which were not reported on respondent's tax returns. Petitioner further averred that respondent would sometimes receive from $12,000 to $20,000 cash for a job, and in 2000 or 2001, received between $60,000 and $100,000 in undeclared cash payments. Respondent maintained that the cash kept in their home was either from personal or business accounts and was used to pay vendors who she patronized through her business, to pay a caregiver for the children, or was money borrowed from her father.

Respondent further testified that when her financial circumstances began to decline, she borrowed money from her father, took cash advances on her credit cards, and took whatever jobs she could find, but after February 2001, she could no longer make the child support payments and had overextended herself. Respondent, however, in the same year the parties separated, purchased or leased a Volkswagen Cabriolet and a Mitsubishi Lancer and on the lease application for the Mitsubishi, she indicated her annual salary was $80,000. Respondent, when confronted with this figure at the hearing, testified that she had intentionally misrepresented her income so that her application would be approved.

Heidi Muckler, a forensic accountant, testified, inter alia, that she reviewed respondent's personal and corporate tax returns for the years 1999 through 2001 and concluded that respondent's gross income was approximately $60,000, petitioner's gross income was approximately $70,000, and that the most profitable year for respondent's business, according to the documents she reviewed, was 2000.

What is clear is that prior to the parties' separation, the children enjoyed a fairly high standard of living, including two to three vacations each year, summer camps, and numerous extracurricular activities, including Dutch lessons, Tae Kwan Do, computer training courses, music and swimming lessons, and soccer. The children also received Christmas gifts each year worth approximately $2,000, and had several family pets, includ-

ing two dogs and seven cats. The parties also owned two time-shares in Mexico and Saint Maarten, which they visited often.

The Support Magistrate, in a 71-page decision dated January 20, 2004, found Muckler's testimony to be credible, but of "limited value" because of "readily admitted . . . shortcomings in her report, her methodology and in the process itself." The Magistrate further noted that "[t]he witness clearly indicated that the information in the report could in no way be used to determine an amount of unsourced income in 2003."

With regard to respondent, the Magistrate found her testimony to be neither candid, nor fully credible, and observed that: "She contradicted herself on numerous occasions, her testimony often changing between court sessions and sometimes even changing between questions. She oftentimes denied statements in previous court proceedings only to be confronted with the transcript of her testimony . . . . When asked about previous testimony in this matter, the Respondent again denied making the previous contradictory statement or she became combative and attempted to avoid the questions posed."

Petitioner, in the Magistrate's view, fared no better as he also found her testimony to be not fully credible, specifically noting that "[h]er testimony concerning the 'wads' of cash she observed sounded contrived and was not fully believable. She contradicted herself in her testimony and her story seemed to change depending on how a question was phrased." Moreover, the Magistrate characterized petitioner's testimony as sounding like that of a "jealous child, always contrasting her own poor material condition to a supposed more advantageous lifestyle in the Respondent's home."

The Magistrate determined that petitioner's income, for the purposes of calculating child support, was $78,522.08, which was based upon her 2002 W-2 form, minus certain deductions. The Magistrate, however, found that determining respondent's income "was problematic" since she "variously treats herself as an employee and as an independent contractor" and "[s]he determines for herself what her income is and when she gets paid, so she can choose to forego paychecks if it suits the business's or her own personal purposes."

The Magistrate rejected respondent's testimony regarding the decline in her business, noting that business tax returns show a growth in her business which was further evidenced by the fact that she purchased two automobiles between 2000 and 2002. The Magistrate further held that petitioner's expert witness provided "little relevant evidence," although her report would be considered in determining the lifestyle enjoyed by the children prior to the dissolution of the household.

The Magistrate concluded that neither parent could be deemed the custodial parent for purposes of the Child Support Standards Act (CSSA), since both parents had essentially the same income and shared custody equally. The Magistrate, therefore, declined to enter an order of child support and denied both parties' applications for attorneys' fees.

The parties both filed objections to the Magistrate's decision, which were referred to Judge Sturm, who, in turn, remanded the matter to Magistrate Palos for clarification regarding respondent's income and what weight was, and ought to be, given various factors in determining that figure.

The Magistrate, in a supplemental decision, stated that "none of [respondent's] testimony concerning her income was relied upon in reaching my factual determination regarding her income." The Magistrate, given respondent's lack of credibility, noted that he utilized respondent's business's gross revenue figures and tax returns, which were used as a comparison point for each year and in relation to the salary respondent paid herself. The Magistrate further stated that he had not accorded any weight to the expert's testimony since the expert herself acknowledged on the stand that her findings regarding respondent's 2000 income were too remote to have a bearing on her 2003 income, and he found, in any event, that the expert's methodology was flawed.

Family Court thereafter agreed with the Magistrate that it was not possible to differentiate between the parties on the basis of their access to the children, "as they enjoy an exactly equal division of the children's time," but went on to conclude that the Magistrate "appears to have gone to great lengths to equalize the parties' income in order to avoid making an order of support in favor of either parent."

Family Court calculated petitioner's adjusted gross income to be $79,316.74, which was within $1,000 of the figure arrived at by the Magistrate. With regard to respondent, Family Court found that it was an abuse of discretion for the Magistrate to utilize respondent's tax returns in light of his conclusion that none of her testimony concerning her income was credible. Family Court then disregarded the tax returns for the purpose of establishing a base income and, instead, utilized the figure respondent listed as her annual income on a car lease application in November 2001, which was $80,000. Family Court, after additional adjustments, concluded that respondent's adjusted gross income, for child support purposes, was $102,275.86. The court, in light of the shared custody situation, concluded that a strict application of the CSSA guidelines would be unjust and ordered

respondent to pay monthly support of $958.33 to petitioner, retroactive to May 2, 2002, the date petitioner filed the petition. Respondent appeals and we now reverse.

Initially, we perceive of no basis, in light of the Magistrate's credibility findings, for Family Court's decision to utilize the $80,000 figure respondent reported on her car loan application, while discounting respondent's tax returns due to lack of credibility. While it is extremely difficult to determine what respondent's actual income was during the relevant years given the lack of credible evidence provided by either party, as well as the lack of relevance of the expert's testimony, what is clear is that respondent's business tax returns reflect a modest increase in revenue from 2001 to 2002, rather than the drastic decrease she alleged. Moreover, it is also clear from the children's lifestyle that some unknown additional amount of income, other than that acknowledged by respondent, but less than that alleged by petitioner, was coming into the household. Since, based on the record before us, it is not possible to calculate an appropriate award of support pursuant to the CSSA, we find that the parties should comply with the terms of the mediation agreement, which, notably, was executed after the events which purportedly devastated respondent's business.

Respondent, therefore, is directed to pay petitioner $600 per month, retroactive to the date of the filing of the petition. Concur—Marlow, J.P., Nardelli, Williams, Sweeny and McGuire, JJ.